IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY PATTERSON, )
)
Petitioner, )
)
v. ) Civil Action No. 3:18CV854–HEH
)
MARK BOLSTER, )
)
Respondent. )

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

Anthony Patterson, a federal inmate proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1). Patterson's claims stem from his convictions within the Bureau of Prisons ("BOP") for the institutional infractions of possession of narcotics and use of intoxicants. Specifically, Patterson raises the following claims for relief:[1]

> Claim One: Patterson was "denied due process . . . when the Discipline Hearing Officer [("DHO")] failed to provide [him] with a written copy of his decision and the reasons for the sanctions following the DHO hearing." (§ 2241 Pet. 6.)
>
> Claim Two: The DHO's findings at Patterson's "disciplinary hearings were unsupported by 'some evidence.'" (Mem. Supp. § 2241 Pet. 5, ECF No. 2.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

Respondent filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 6),[2] asserting, *inter alia*, that Patterson's claims lack merit.[3] Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Patterson has not responded. For the reasons set forth below, Respondent's Motion for Summary Judgment (ECF No. 6) will be granted. Patterson's § 2241 Petition (ECF No. 1) will be denied because his claims are without merit.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion, and to identify the parts of the

---

[2] Because the Court relies upon the exhibits submitted by the parties, the Court will determine whether summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure, and declines to consider Respondent's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). As such, Respondent's Motion to Dismiss (ECF No. 5) will be dismissed as moot.

[3] Respondent also argues that Patterson's § 2241 Petition should be dismissed because he "failed to exhaust his administrative remedies." (Mem. Supp. Mot. Summ. J. 13, ECF No. 7.) It is Respondent's burden to establish that Patterson did not exhaust all available administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding that "failure to exhaust [administrative remedies] is an affirmative defense"). Here, Respondent contends that as of March 8, 2019, Patterson had "not submitted an[y] appeal to the BOP's Central Office," and therefore, he had not exhausted all administrative remedies. (Kelley Decl. ¶¶ 31–32; *see* Mem. Supp. § 2241 Pet. 13–16.) However, in Patterson's instant § 2241 Petition, one of his claims pertains to the approximately ten-month delay in his receipt of the DHO Reports from his disciplinary hearings. Respondent has not adequately addressed whether the *significant* delay in Patterson's receipt of the DHO Reports impacts Patterson's ability to exhaust all administrative remedies before filing suit. As such, the Court will address the merits of Patterson's claims.

record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

3

In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Christina Kelley, a Senior Attorney at the Federal Correctional Complex in Butner, North Carolina, whose office oversees legal issues arising at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), ("Kelley Decl.," ECF No. 7-1, at 1–9); (2) a copy of Patterson's inmate data report reflecting Patterson's current sentence and his projected release date (*id.* at 11–14); (3) a copy of an Incident Report for the institutional infraction of possession of narcotics (*id.* at 16–17); (4) copies of a Notice of Discipline Hearing Before the DHO form and a Duties of Staff Representative form for the institutional infraction of possession of narcotics (*id.* at 19–20); (5) two copies of the Inmate Rights at Discipline Hearing form (*id.* at 22, 33); (6) a copy of a DHO Report for the institutional infraction of possession of narcotics (*id.* at 24–26); (7) a copy of an Incident Report for the institutional infraction of use of intoxicants (*id.* at 28–29); (8) a copy of a Notice of Discipline Hearing Before the DHO form for the institutional infraction of use of intoxicants (*id.* at 31); (9) a copy of a DHO Report for the institutional infraction of use of intoxicants (*id.* at 35–36); (10) copies of the records of Patterson's administrative remedy requests (*id.* at 38–42); (11) a copy of the Evidence Photo Spread depicting the items recovered from Patterson (*id.* at 44); and, (12) copies of correspondence related to Patterson's institutional infraction of possession of narcotics (*id.* at 45–47).

Patterson signed his § 2241 Petition under penalty of perjury. (§ 2241 Pet. 9.) Patterson also submitted exhibits with his § 2241 Petition (ECF Nos. 2-1, 2-2), as well as a Memorandum in Support of the § 2241 Petition (ECF No. 2). The Court will consider

these submissions in determining the propriety of the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c).

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Patterson.

## II. SUMMARY OF PERTINENT FACTS

Patterson is currently serving "an aggregate sentence of seventeen years, four months, and 29 days," as imposed by the United States District Court for the District of South Carolina and the United States District Court for the Northern District of Georgia. (*See* Kelley Decl. ¶ 4.)[4] The events giving rise to the instant § 2241 Petition occurred at FCC Petersburg, and Patterson was incarcerated at FCC Petersburg when he initiated this action. (§ 2241 Pet. 1–2.)

On March 6, 2018, staff at FCC Petersburg became aware of an incident involving Patterson in which he was suspected of being intoxicated. (ECF No. 7–1, at 16.) The officer who became aware of the incident reported:

> On March 6, 2018, at approximately 9:00 PM, I conducted a visual search on inmate Patterson, Anthony Reg. No. 57218–019. Patterson was suspected of being intoxicated and having narcotics on his person. During the search, a gray pouch was found tied to Patterson's underwear, inside the pouch were 23-taped yellow pouches of paper containing a brown leafy substance. The substance tested positive for amphetamines with NIK kit test "A" and "U" at 9:10 PM.

---

[4] The Court omits the secondary citations set forth in the Kelley Declaration.

(*Id.*) During the March 6, 2018 incident, Patterson also was tested for use of alcohol. (*See id.* at 28.) The officer reported:

> On March 6, 2018, at approximately 9:08 PM, I conducted [a] breathalyzer test on inmate Patterson, Anthony Reg. No. 57[21]8–019 using ALCO Sensor IV serial #115199 [and] his reading [was] .038. Patterson was tested again at 9:23 PM [and] his second result was .035; Patterson was placed in SHU for the use of intoxicants.

(*Id.*) The Incident Reports charging Patterson with possession of narcotics in violation of BOP Prohibited Act 113 and use of intoxicants in violation of BOP Prohibited Act 112 were filed later that same day. (*Id.* at 16, 28.)

Patterson received a copy of the two Incident Reports on March 7, 2018. (*Id.* at 16, 28.) At that time, Patterson was advised of his institutional rights, and he indicated that he understood his rights. (*Id.* at 17, 29.) With respect to the charge of possession of narcotics, Patterson indicated that he "did not wish to call any inmate witnesses" and "requested Dr. Tinsley as his staff representative." (*Id.* at 17.) With respect to the charge of use of intoxicants, Patterson indicated that he "did not wish to call any inmate witnesses" and "did not wish to request a staff representative." (*Id.* at 29.) During the investigation into the incident, "when questioned in regards to the "[I]ncident [R]eport" for the charge of possession of narcotics, Patterson stated, "Man that stuff is straight tobacco. There is nothing else in that stuff." (*Id.* at 17.) Patterson indicated that he did not wish to make a statement regarding the charge of use of intoxicants. (*Id.* at 29.) Upon completion of the investigation, the investigator recommended that the reports be forwarded to the Unit Discipline Committee ("UDC"). (*Id.* at 17, 29.)

On March 12, 2018, Patterson appeared before the UDC to answer for the charges of possession of narcotics and use of intoxicants. (Kelley Decl. ¶¶ 7, 20.) During the UDC hearing, Patterson admitted that the charge of use of intoxicants was true. (*Id.* ¶ 20.) With respect to the charge of possession of narcotics, Patterson stated: "All I had was cigarettes. I purchase them to make some money. I [am] asking that the cigarettes be sent to the lab and retested, I didn't have any drugs." (*Id.* ¶ 7 (internal quotation marks omitted).) The UDC referred both matters to the DHO for further hearing "[d]ue to the severity of the incident." (*Id.* ¶¶ 7, 20.) Later that same day, Patterson received written notice that the matter was being referred to the DHO for further hearing. (ECF No. 7-1, at 19, 31.) Patterson also received written notice of his rights at the DHO hearing, and he acknowledged being advised of his rights. (*Id.* at 22, 33.) With respect to the charge of possession of narcotics, Patterson again indicated that he wished to have Dr. Tinsley serve as his staff representative at the DHO hearing and that he did not wish to call any witnesses. (*Id.* at 19.) With respect to the charge of use of intoxicants, Patterson indicated that he did not wish to have a staff representative at the hearing and did not wish to call any witnesses. (*Id.* at 31.)

The DHO held hearings for both charges on March 22, 2018. (Kelley ¶¶ 9, 22.) At the hearings, the DHO confirmed that Patterson had received copies of the Incident Reports and understood his rights, including his right to have a staff representative present and to call witnesses on his behalf. (ECF No. 7-1, at 24, 35.)

As Patterson had requested, Dr. Tinsley served as his staff representative for the charge of possession of narcotics and appeared at the DHO hearing. (*Id.* at 24.) During

7

that hearing, Patterson denied the charge, stating: "I do not admit to this charge. They did find the pouches on me. They did not find narcotics. They were cigarettes. I request a lab report." (*Id.* at 25 (internal quotation marks omitted).) "In addition to the Incident Report and Investigation," the DHO considered the following documentary evidence: "Photograph(s) (4) of items and drug testing as depicted in Section 11 of the incident report;" a "Memo from A. Patterson, dated 3/6/2018;" and, an "Email from A. Holderfield, SIS Technician, dated 3/21/2018." (*Id.* at 24.)

The DHO found that the act of possession of narcotics was committed as charged, and sanctioned Patterson by disallowing forty-one days of good conduct time ("GCT") and imposing thirty days in disciplinary segregation and six months' loss of phone use. (*Id.* at 25.) As justification for the charge, conviction, and sentence, the DHO provided the following explanation:

> You were found to have committed the prohibited act Code 113 Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or related Paraphernalia not prescribed by medical staff. The specific evidence relied upon in making this determination was the written statement in the form of an incident report provided by A. Delerme, Correctional Officer, who stated the following:
> > On March 6, 2018 at approximately 9:00 PM I conducted a visual search on inmate Patterson, Anthony Reg. No. 57218–019, Patterson was suspected of being intoxicated and having narcotics on his person. During the search, a gray pouch was found tied to Patterson's underwear, inside the pouch were 23-taped yellow pouches of paper containing a brown leafy substance. The substance tested positive for amphetamines with NIK test kit "A" and "U" at 9:10 PM.
>
> At the DHO hearing you denied the charge. You stated "I do not admit to this charge. They did find the pouches on me. They did not find narcotics. They were cigarettes. I request a lab report."
> In deciding this issue, your assertion that they did not find narcotics and that they were cigarettes was considered, but was insufficient to excuse

8

you from the offense. You did not provide, nor did the DHO find, any evidence to identify that the brown leafy substance in the pouches of paper you admit the officer found on you was something other than what staff tested it to be. The evidence picture on the photo spread clearly shows a Test Kit A and a Test Kit U with a positive test for amphetamines. The Bureau of Prisons considers the NIK Test kits sufficient to determine the presence of narcotics. Without question, it is your responsibility to maintain yourself and area free from any type of contraband at all time. Additionally, Officer Delerme has no apparent motive to wrongly implicate you, or vested interest in you one way or the other. On the other hand, you have an obvious motive to be less than candid about the incident to avoid the consequences of your actions.

Accordingly, I find a strong measure of evidence present to support a violation of Possession of Any Drug, code 113, of the inmate discipline policy.

(*Id.*)

At the DHO hearing for the charge of use of intoxicants, Patterson admitted to the charge, stating: "I admit [to] [t]he charge. I did drink alcohol the same day I was tested." (*Id.* at 35.) The DHO found that Patterson had committed the act of use of intoxicants, and sanctioned Patterson by disallowing forty-one days of GCT and imposing fifteen days in disciplinary segregation and six months' loss of commissary use. (*Id.* at 36.) As justification for the charge, conviction, and sentence, the DHO provided the following explanation:

You were found to have committed the prohibited act Code 112 Use of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or related Paraphernalia not prescribed by medical staff. The specific evidence relied upon in making this determination was the written statement of an incident report provided by A. Easter, Senior Officer Specialist, who stated the following:

On March 6, 2018 at approximately 9:08 PM I conducted [a] Breathalyzer test on inmate Patterson, Anthony Reg. No. 57[21]8–019 using ALCO Sensor IV serial #115199 [and] his reading [w]as .038. Patterson was tested again at 9:23

9

>PM [and] his second result was .035; Patterson was placed in SHU for the use of intoxicants.
>The DHO considered your statement to the charge against you. The DHO asked if you admitted or denied the charge against you. You replied, "I admit [to] [t]he charge. I did drink alcohol the same day I was tested." The evidence provided along with your admission to the charge clearly supports the finding of the DHO [that] you committed the prohibited act of Use of Alcohol, Code 112.

(*Id.*)

Approximately seven months after the DHO hearings, the DHO Report for the charge of possession of narcotics was completed and signed on October 24, 2018 (*id.* at 26), and the DHO Report for the charge of use of intoxicants was completed and signed on October 25, 2018. (*Id.* at 36.) Both DHO Reports were delivered to Patterson on January 10, 2019, almost ten months after the DHO hearings. (*Id.* at 26, 36.)

Upon receipt of the DHO Reports, Patterson was advised that "he could appeal the DHO's findings through the BOP's Administrative Remedy Procedure within twenty calendar days of receiving the DHO Report." (Kelley Decl. ¶¶ 16, 29.) On January 21, 2019, Patterson appealed the DHO's decisions with respect to both charges to the BOP's Mid-Atlantic Regional Office. (*Id.* ¶¶ 31–32.) The Regional Office denied Patterson's appeals on March 6, 2019, and as of March 8, 2019, Patterson had "not submitted an[y] appeal to the BOP's Central Office." (*Id.* ¶¶ 31–32.)

### III. ANALYSIS

In Claim One, Patterson contends that he was denied due process when the DHO "failed to provide [him] with a written copy of his decision and the reasons for the sanctions following the DHO hearing." (§ 2241 Pet. 6.) Relatedly, in Claim Two,

Patterson contends that the DHO's findings at Patterson's "disciplinary hearings were unsupported by 'some evidence.'" (Mem. Supp. § 2241 Pet. 5.)

A.   Claim One is Moot

As an initial matter, contrary to Patterson's assertion regarding his failure to receive the DHO Reports, after he initiated this action, Patterson received both DHO Reports. Specifically, the Court received Patterson's § 2241 Petition on December 12, 2018 (§ 2241 Pet. 1), and the DHO Reports were delivered to Patterson on January 10, 2019. (ECF No. 7–1, at 26, 36.)

Therefore, with respect to Patterson's claim that he did not receive the DHO Reports, such a claim is moot because after filing this action, Patterson received the DHO Reports. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983) ("If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[] [is] powerless to decide the questions presented."); *see also Shahan v. Ormond*, No. 3:18CV200–HEH, 2018 WL 6681210, at *4 (E.D. Va. Dec. 19, 2018) (concluding that an inmate's claim regarding his failure to receive the DHO Report was moot because, after initiating the action, the inmate received the DHO Report), *aff'd*, No. 19–6346, 2019 WL 4733408 (4th Cir. Sept. 27, 2019).

Nevertheless, because Patterson's claims clearly lack merit, the Court turns to the merits of Claims One and Two.

## B.     Claims One and Two Lack Merit

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

As noted above, upon finding that Patterson had committed the charged acts of possession of narcotics and use of intoxicants, the DHO imposed the following sanctions on Patterson: the DHO disallowed forty-one days of GCT and imposed thirty days in disciplinary segregation and six months' loss of phone use for the charge of possession of narcotics (ECF No. 7–1, at 25), and the DHO disallowed forty-one days of GCT and imposed fifteen days in disciplinary segregation and six months' loss of commissary use for the charge of use of intoxicants. (*Id.* at 36.)

It is well established that inmates, such as Patterson, have a protected liberty interest in vested GCT. *See Puranda v. Hill*, No. 3:10CV733–HEH, 2012 WL 2311844, at *3 (E.D. Va. June 18, 2012) (citing *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 653 n.9 (4th Cir. 2007)); *see also Wolff v. McDonnell*, 418 U.S. 539, 560–61 (1974). However, Patterson does not have a protected liberty interest in his placement in disciplinary segregation, loss of phone use, or loss of commissary use. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoner[']s location,

variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ."); *see also Wright v. Shartle*, 699 F. App'x 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are "not cognizable under section 2241 because they do not concern the manner, location, or conditions of [an inmate's] sentence's execution"); *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (finding that an inmate's "loss of commissary privileges . . . doe[es] not implicate due process concerns"). Therefore, the only sanction in which Patterson has a protected liberty interest is his loss of eighty-two days of GCT.

As to the revocation of GCT, the Constitution guarantees only the following minimal process prior to revoking vested GCT:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing *Wolff*, 418 U.S. at 563–71). Additionally, "the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke [GCT]." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added). The Supreme Court emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the

relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citations omitted).

Here, Patterson received all process that was due prior to the revocation of his GCT. Specifically, the undisputed evidence reflects that Patterson received an impartial hearing, during which he had the opportunity, if he so chose, to present documentary evidence and witness testimony, and he received written notice of the charge against him prior to the hearing. (*See* Kelley Decl. ¶¶ 5–12, 18–25.) Patterson was also provided with an opportunity to receive assistance from a staff representative (*id.* ¶¶ 8, 21), and he received the DHO Reports, which describe the evidence relied upon by the DHO and the reasons for the imposed disciplinary action. (*See* ECF No. 7-1, at 24–26, 35–36.)

Furthermore, contrary to Patterson's assertion that the DHO's findings at Patterson's "disciplinary hearings were unsupported by 'some evidence,'" (Mem. Supp. § 2241 Pet. 5), overwhelming evidence clearly supported the DHO's decision to find Patterson guilty of possession of narcotics and use of intoxicants because, *inter alia*, Patterson admitted to possessing "the pouches," which tested positive for amphetamines, and admitted to drinking "alcohol the same day [he] was tested." (ECF No. 7-1, at 25, 36 (internal quotation marks omitted).) Therefore, for these reasons, Patterson received all process that was due prior to the revocation of his GCT.

Moreover, generously construing Patterson's § 2241 Petition as raising a general due process claim regarding his delayed receipt of the DHO Reports, such a claim also fails. "It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171

14

F.3d 175, 183 (4th Cir. 1999) (citation omitted). In the context of an inmate's delayed receipt of the DHO's report, courts have held that an inmate, such as Patterson, does not suffer any prejudice when the inmate receives the DHO's report months after the hearing, and that such a multi-month delay does not constitute a due process violation.[5] *See, e.g., Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff*"); *Staples v. Chester*, 370 F. App'x 925, 929–30 (10th Cir. 2010) ("Assuming without deciding that a copy of the report was required [to be included with the administrative appeal], [the Court did] not conclude that the approximate eight-month delay in the DHO's tender of the copy to [the inmate] prejudiced his ability to bring an administrative appeal or rendered such an appeal futile."); *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) ("[E]ven if [the inmate] did not receive the DHO's written report within 10 days . . . the delay had no prejudicial effect on [the inmate's] administrative appeal and thus does not provide a basis for habeas relief."); *Shahan*, 2018 WL 6681210, at *8 (citations omitted) (discussing that, even if an inmate successfully challenged the loss of GCT in an appeal, any delay in the inmate's receipt of the DHO Report "would not have prevented [the inmate] from receiving the benefit of

---

[5] The Court notes that, despite the delay in Patterson's receipt of the DHO Reports, when Patterson received the DHO Reports on January 10, 2019, Patterson had the "right to appeal th[e] action[s] within 20 days under the Administrative Remedy Procedure." (ECF No. 7-1, at 25, 36.)

15

[the] successful appeal" because any revocation of the inmate's GCT impacts his or her *future* release date).

In summary, with respect to Claims One and Two, a review of the record reveals that Patterson's disciplinary convictions were supported by overwhelming evidence and he received all process that was due before the revocation of his GCT. Accordingly, Claims One and Two are without merit and will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 6) will be granted. The Motion to Dismiss (ECF No. 5) will be dismissed as moot. Patterson's claims will be dismissed. The § 2241 Petition (ECF No. 1) will be denied.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
Date: January 30, 2020    SENIOR UNITED STATES DISTRICT JUDGE
Richmond, Virginia